**LEVI & KORSINSKY, LLP**
Adam C. McCall (SBN 302130)
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071
Tel:  (213) 985-7290
Email: amccall@zlk.com

*Attorneys for Movant Peter J. Enzinna*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM FABBRI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>INOGEN, INC., SCOTT WILKINSON, and ALISON BAUERLEIN,<br><br>Defendants. | No. 2:19-cv-01643-FMO-AGR<br><br>**MEMORDANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION OF PETER J. ENZINNA FOR CONSOLIDATION OF THE ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL**<br><br>Judge: Hon. Fernando M. Olguin<br>Date:  June 6, 2019<br>Time: 10:00 a.m.<br>Courtroom #6D - 6th Floor |
| STEVEN FRIEDLAND, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>INOGEN, INC., SCOTT WILKINSON, and ALISON BAUERLEIN,<br><br>Defendants. | No. 2:19-cv-02112-FMO-AGR<br><br>Judge: Hon. Fernando M. Olguin |

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT....................................................................1

II.     STATEMENT OF FACTS...........................................................................2

III.    ARGUMENT .............................................................................................4

    A. THE RELATED ACTIONS SHOULD BE CONSOLIDATED...................4

    B. MOVANT'S APPOINTMENT AS LEAD PLAINTIFF IS
       APPROPRIATE......................................................................................5

        1.  The Procedure Required by the PSLRA .................................................5

            a. Movant Is Willing to Serve As Class Representative..........................6

            b. Movant Has the Requisite Financial Interest in the Relief Sought by
               the Class.............................................................................................6

        2.  Movant Satisfies the Requirements of Rule 23(a) of the Federal Rules
            of Civil Procedure..............................................................................7

            a. Movant's Claims are Typical of the Claims of all the Class Members 8

            b. Movant will Adequately Represent the Class.....................................9

    C. APPROVING MOVANT'S CHOICE OF COUNSEL IS
       APPROPRIATE....................................................................................10

IV.     CONCLUSION .......................................................................................10

# TABLE OF AUHTORITIES

**Cases**

*In re Cavanaugh,*
306 F.3d 726 (9th Cir. 2002) ................................................................................. 1, 7, 8

*Crawford v. Honig,*
37 F.3d 485 (9th Cir. 1994) ................................................................................... 9

*In re Drexel  Burnham Lambert Group,*
960 F.2d 285 (2d Cir. 1992) .................................................................................. 9

*Ferrari v. Gisch,*
225 F.R.D. 599 (C.D. Cal. 2004) .......................................................................... 8

*Gen. Tel. Co. of the Southwest v. Falcon,*
457 U.S. 147 (1982) .............................................................................................. 9

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) .............................................................................. 8

*Haung v. Acterna Corp.,*
220 F.R.D. 255 (D. Md. 2004) ............................................................................. 8

*Hufnagle v. Rino Int'l Corp.,*
No. CV 10-8695-VBF(VBKx), 2011 U.S. Dist. LEXIS 19771 (C.D. Cal. Feb. 14, 2011) ............................................................................................................. 5

*Maiden v. Merge Techs., Inc.,*
No. 06-cv-349, 2006 U.S. Dist. LEXIS 85635 (E.D. Wis. Nov. 21, 2006) ........ 7

*In re Milestone Sci. Sec. Litig.,*
183 F.R.D. 404 (D.N.J. 1998) .............................................................................. 8

*In re Oxford Health Plans, Inc. Sec. Litig.,*
182 F.R.D. 42 (S.D.N.Y. 1998) ........................................................................... 8

*Robidoux v. Celani,*
987 F.2d 931 (2d Cir. 1993) .................................................................................. 8

*Takeda v. Turbodyne Techs., Inc.,*
67 F. Supp. 2d. 1129 (C.D. Cal. 1999) ................................................................ 8

*Weiss v. York Hosp.,*
745 F.2d 786 (3d Cir. 1984) .................................................................................. 9

**Statutes**

15 U.S.C. § 78u-(a)(3)(A)(i)(II) ............................................................................... 5

15 U.S.C. § 78u-(a)(3)(B)(i) ...................................................................................... 5

15 U.S.C. § 78u-4(3)(B)(iii)(I) .................................................................................. 10

15 U.S.C. § 78u-4(a) ...............................................................................................5

15 U.S.C. § 78u-4(a)(3)(B) ...............................................................................passim

15 U.S.C. § 78u-4(a)(3)(B)(ii)...........................................................................4, 5

15 U.S.C. § 78u-4(a)(3)(B)(iii) ...............................................................................6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ...........................................................................6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)....................................................................10

15 U.S.C. § 78u-4(e) ...............................................................................................7

**Rules**

Fed. R. Civ. P. 23 ............................................................................................passim

Fed. R. Civ. P. 42(a)................................................................................................4

## I.    PRELIMINARY STATEMENT

Presently pending before the Court are two securities class action lawsuits (the "Actions")[1] brought on behalf of all persons who purchased or otherwise acquired the securities of Inogen, Inc. ("Inogen" or the "Company") between November 8, 2017 and Februry 26, 2019, inclusive ("Class Period"). Plaintiffs in the  above-captioned actions allege violations of the Securities Exchange Act of 1934 (the "Exchange Act") against the Company, Scott Wilkinson ("Wilkinson"), and Alison Bauerlein ("Bauerlein") (collectively, "Defendants").[2]

Movant Peter J. Enzinna ("Movant") lost approximately $149,818.12 as a result of the alleged fraud during the Class Period. Movant respectfully submits this memorandum of law in support of his motion for (a) the consolidation of the actions; (b) appointment as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995, as amended (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B); and (c) for approval of his selection of Levi & Korsinsky, LLP ("Levi & Korsinsky") as Lead Counsel.

The PSLRA provides for the Court to appoint as lead plaintiff the movant that has the largest financial interest in the litigation and has made a *prima facie* showing that it is an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure. *See generally In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002). Movant satisfies both requirements.

Movant believes that he has the largest financial interest in the outcome of the case.[3] As such, Movant meets the requirements of the PSLRA for  appointment

---

[1] The two actions pending in this Court are entitled *Fabbri v. Inogen, Inc., et al.,* Case No. 2:19-cv-01643(C.D. Cal. Mar. 6, 2019)(the "*Fabbri* Action"), and *Friedland v. Inogen, Inc,. et al.,* Case No. 2:19-cv-02112(C.D. Cal. Mar. 21, 2019) (the "*Friedland* Action").

[2] The Actions allege violations under Sections 10(b) and 20(a) of the Exchange Act, as well as Rule 10b-5 promulgated thereunder.

[3] Movant's certifications identifying his transactions during the Class Period and a chart identifying his collective losses, is attached to the Declaration of Adam C.

as Lead Plaintiff. Moreover, Movant satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure in that his claims are typical of the claims of the Class, and he will fairly and adequately represent the interests of the Class.[4]

Accordingly, Movant respectfully submits that he should be appointed lead plaintiff. Additionally, Movant's selection of Levi & Korsinsky as Lead Counsel for plaintiff and the proposed class should be approved by this Court.

## II.   STATEMENT OF FACTS

Inogen is a medical technology company that primarily develops, manufactures, and markets portable oxygen concentrators used to deliver supplemental long-term oxygen therapy to patients suffering from chronic repiratory conditions.¶ 5.[5]

By overstating the strength of Inogen's salesforce acumen and the size of the total addressable market ("TAM") for its portable oxygen concentrators throughout the Class Period, Inogen and its senior executives led the market to believe the Company's business metrics and financial prospects were much stronger than they really were, causing a sizable run-up in the price of Inogen common stock – which skyrocketed from its close of $101.65 per share on November 7, 2017 to reach a Class Period high of more than $282 per share by September 14, 2018. ¶ 6.

Unbeknownst to investors, Inogen was overstating the true size of the TAM for its portable oxygen concentrators, claiming it was upwards of 3 million people; misstating the basis for its calculation of the TAM; falsely attributing its sales growth to the strong sales acumen of its salesforce, when in reality it was due in

McCall, dated May 6, 2019 ("McCall Decl."), as Exhibits A, and B, respectively.

[4] The Actions exclude from the Class the Defendants, officer and directors of the Company, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

[5] Citations to "¶" are to paragraphs of the Class Action Complaint for Violation of the Federal Securities Laws (the "Complaint") filed in the *Fabbri* Action. The facts set forth in the Complaint are incorporated herein by reference.

large part to nefarious sales tactics designed to deceive its elderly customer base (including inducing them to purchase portable oxygen concentrators from Inogen at inflated prices by claiming that Medicare did not otherwise cover payment for such devices if obtained from other providers); that as such, the growth in Inogen's domestic business-to-business sales to home medical equipment ("HME") providers was inflated, unsustainable and was eroding direct-to-consumer sales; that very little of Inogen's business was actually coming from the more stable Medicare market; and that as a result, defendants' Class Period statements about Inogen's business metrics and financial prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times. ¶ 7.

Inogen released its third quarter 2018 financial results after the market closed on November 6, 2018. While the quarterly financial results were in line with expectations, defendants revealed that the growth in domestic business-to-business sales to HME providers had slowed precipitously to 32% from 56% in the second quarter of 2018. ¶ 8. Inogen also reduced its guidance for fiscal 2018 adjusted EBITDA to $60-$62 million from $65-$69 million. *Id.* As a result, the price of Inogen common stock fell over 19%, or $37.44 per share, to close at $155.86 per share, on very heavy volume of 2.64 million shares traded, almost five times the average daily volume over the preceding five trading days. *Id.*

Then, following the publication of detailed investigative reports by stock analysts on February 8, 2019 and February 12, 2019, which challenged, among other things, the size of Inogen's actual TAM, the basis for its prior TAM claims, and the nefarious source of its Class Period sales growth, the price of Inogen common stock declined precipitously to close at $138.05 per share on February 12, 2019. ¶ 9.

Finally, on February 26, 2019, after the close of trading, Inogen issued a press release announcing its fourth quarter and fiscal year 2018 ("4Q18" and "FY18") financial results for the period ended December 31, 2018, and conducted a

conference call with investors and stock analysts to discuss its business metrics and financial prospects. ¶ 10. During the conference call, defendant Scott Wilkinson backtracked on the Company's prior TAM estimate of 2.5 to 3 million patients, and blamed Inogen's poor "domestic business-to-business sales" on "order activity [that] slow[ed] from one national home care provider in the fourth quarter of 2018." *Id.* Inogen also reported that its 4Q18 non-GAAP EBITDA was $10.5 million, 9.5% lower than fiscal 2017, and significantly reduced its previously provided fiscal 2019 net income guidance, blaming in large part the decline in its own stock price. *Id.*

On this news, the price of Inogen common stock fell an additional $33.77 per share, or more than 24%, from a close of $140.06 per share on February 26, 2019, to a close of $106.28 per share on February 27, 2019, on unusually high volume of more than 3.64 million shares traded, or more than seven times the average daily trading volume over the preceding five trading days. ¶ 11.

## III. ARGUMENT

### A. THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Pursuant to the PSLRA, the Court should first rule on motions to consolidate before addressing the lead plaintiff/lead counsel issues. See 15 U.S.C. § 78u-4(a)(3)(B)(ii). Consolidation is appropriate where there are actions involving common questions of law or fact. See Fed. R. Civ. P. 42(a).

The actions pending before this Court are suited for consolidation. The class action complaints are all brought by purchasers of Inogen securities. The complaints allege nearly identical class periods and contain nearly identical allegations charging Defendants with making false and misleading statements concerning the safety and commercial viability of its lead product candidates.

"Courts have recognized that securities class actions are particularly suited to consolidation to help expedite pretrial proceedings, reduce case duplication, avoid the involvement of parties and witnesses in multiple proceedings, and minimize the expenditure of time and money." *Hufnagle v. Rino Int'l Corp.*, No.

CV 10-8695-VBF(VBKx), 2011 U.S. Dist. LEXIS 19771, at *6-7 (C.D. Cal. Feb. 14, 2011) (Fairbank, J.). Although the Actions are not identical, their common factual and legal bases, similar class periods, nearly identical legal claims, and identical Defendants, warrant consolidation of the Actions.

### B.   MOVANT'S APPOINTMENT AS LEAD PLAINTIFF IS APPROPRIATE

#### 1.   The Procedure Required by the PSLRA

Once the Court decides the consolidation motion, the PSLRA mandates that the Court decide the lead plaintiff issue "[a]s soon as practicable." 15 U.S.C. § 78u-4(a)(3)(B)(ii). The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a) and (a)(3)(B).

The plaintiff who files the initial action must publish notice to the class within 20 days after filing the action, informing class members of their right to file a motion for appointment of lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(ii). The PSLRA requires the Court to consider within 90 days all motions filed within 60 days after publication of that notice by any person or group of persons who are members of the proposed class to be appointed lead plaintiff. 15 U.S.C. §§ 78u-(a)(3)(A)(i)(II) and (a)(3)(B)(i).

The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

(aa)   has either filed the complaint or made a motion in response to a notice;

(bb)   in the determination of the  court, has the largest financial interest in the relief sought by the class; and

(cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted only upon

proof by a class member that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, Movant satisfies the foregoing criteria and is not aware of any unique defenses that defendants could raise against him. Therefore, Movant is entitled to the presumption that he is the most adequate plaintiff to represent the Class and, as a result, should be appointed lead plaintiff in the Actions.

### a. Movant Is Willing to Serve As Class Representative

On March 6, 2019, counsel in the *Fabbri* Action caused a notice (the "Notice") to be published pursuant to Section 21D(a)(3)(A)(i), which announced that a securities class action had been filed against Inogen and certain of its officers and directors, and which advised putative class members that they had sixty days from the date of the Notice to file a motion to seek appointment as a lead plaintiff in the Actions.[6]

Movant has reviewed the complaints filed in the pending Actions and has timely filed his motion pursuant to the Notice.

### b. Movant Has the Requisite Financial Interest in the Relief Sought by the Class

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Court shall appoint as Lead Plaintiff the movant or movants with the largest financial loss in the relief sought by the actions. As demonstrated herein, Movant has the largest known financial interest in the relief sought by the Class. *See* McCall Decl., Ex. B. The movant who "has the largest financial interest in this litigation and meets the adequate and typicality requirements of Rule 23 . . . is presumptively entitled to lead plaintiff

---

[6] The *Fabbri* Action was filed in this Court on March 6, 2019. On that same day, the Notice was published over *Business Wire*, a widely-circulated national business-oriented wire service. See McCall Decl. Ex. C.

status." *Maiden v. Merge Techs., Inc.*, No. 06-cv-349, 2006 U.S. Dist. LEXIS 85635, at \*13 (E.D. Wis. Nov. 21, 2006) (citing *In re Cavanaugh*, 306 F.3d at 732).

Under the PSLRA, damages are calculated based on (i) the difference between the purchase price paid for the shares and the average trading price of the shares during the 90 day period beginning on the date the information correcting the misstatement was disseminated, or (ii) the difference between the purchase price paid for the shares and the average trading price of the shares between the date when the misstatement was corrected and the date on which the plaintiff sold his shares, if he sold his shares before the end of the 90 day period. 15 U.S.C. § 78u-4(e).

During the Class Period, Movant purchased Inogen shares in reliance upon the materially false and misleading statements issued by defendants, and were injured thereby. Movant suffered a substantial loss of $149,818.12. See McCall Decl. Ex. B. Movant thus has a significant financial interest in the outcome of this case. To the best of his knowledge, there are no other applicants who have sought, or are seeking, appointment as lead plaintiff that have a larger financial interest and also satisfy Rule 23.

**2.      Movant Satisfies the Requirements of Rule 23(a) of the Federal Rules of Civil Procedure**

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification outlined in Fed. R. Civ. P. 23, only two – typicality and adequacy – are recognized as appropriate for consideration at this stage. *See Cavanaugh*, 306 F.3d at 730, n.5, 732. Furthermore, only a "preliminary showing" of typicality and adequacy is required at this stage. *See Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d. 1129, 1136 (C.D. Cal. 1999). Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiffs move for class certification. *See Cavanaugh*, 306 F.3d at 732; *see also Haung v. Acterna Corp.*, 220 F.R.D. 255, 259 (D. Md. 2004); *In re Milestone Sci. Sec. Litig.*, 183 F.R.D. 404, 414 (D.N.J. 1998).

As detailed below, Movant satisfies both the typicality and adequacy requirements of Fed. R. Civ. P. 23, thereby justifying his appointment as Lead Plaintiff.

### a. Movant's Claims are Typical of the Claims of all the Class Members

Under Rule 23(a)(3), typicality exists where "the claims . . . of the representative parties" are "typical of the claims . . . of the class." Movant plainly meets the typicality requirement of Rule 23 because: (i) he suffered the same injuries as the absent class members; (ii) he suffered as a result of the same course of conduct by Defendants; and (iii) his claims are based on the same legal issues. *See Ferrari v. Gisch*, 225 F.R.D. 599, 607 (C.D. Cal. 2004); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998); *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 50 (S.D.N.Y. 1998) (typicality inquiry analyzes whether plaintiff's claims "arise from the same conduct from which the other class members' claims and injuries arise"). Rule 23 does not require that the named plaintiff be identically situated with all class members. It is enough if their situations share a common issue of law or

fact. *See Weiss v. York Hosp.*, 745 F.2d 786, 808-09 (3d Cir. 1984). A finding of commonality frequently supports a finding of typicality. *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 158 n.13 (1982) (noting that the typicality and commonality requirements tend to merge).

In this case, the typicality requirement is met because Movant's claims are identical to, and neither compete nor conflict with the claims of the other Class members. Movant, like the other Class members, acquired Inogen securities during the Class Period at prices artificially inflated by Defendants' materially false and misleading statements, and was damaged thereby. Thus, his claims are typical, if not identical, to those of the other Class members because Movant suffered losses similar to those of other Class members and their losses result from Defendants' common course of wrongful conduct. Accordingly, Movant satisfies the typicality requirement of Rule 23(a)(3). *See Weiss*, 745 F.2d at 809; *see also In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992).

### b. Movant will Adequately Represent the Class

Moreover, Movant is an adequate representative for the Class. Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding the adequacy of the movant to whether the interests of the movant are clearly aligned with the members of the putative Class and whether there is evidence of any antagonism between the interests of the movant and other members of the Class. 15 U.S.C. § 78u-4(a)(3)(B); *see Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994) (citation omitted).

Movant's interests are clearly aligned with those of the other Class members. Not only is there no evidence of antagonism between Movant's interests and those of the Class, but Movant has a significant and compelling interest in prosecuting the Actions based on the large financial losses he has suffered as a result of the wrongful conduct alleged in the Actions. This motivation, combined with Movant's

identical interest with the Class members, demonstrates that Movant will vigorously pursue the interests of the Class. In addition, Movant has retained counsel highly experienced in prosecuting securities class actions, and will submit his choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B) (v). Therefore, Movant will prosecute the Actions vigorously on behalf of the Class.

Accordingly, at this stage of the proceedings, Movant has made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and, therefore, satisfies 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). In addition, because Movant has sustained the largest amount of losses from Defendants' alleged wrongdoing, he is, therefore, the presumptive lead plaintiff in accordance with 15 U.S.C. § 78u-4(3)(B)(iii)(I), and should be appointed as such to lead the Actions.

## C.   APPROVING MOVANT'S CHOICE OF COUNSEL IS APPROPRIATE

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with the lead plaintiff's selection of counsel only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant has selected and retained Levi & Korsinsky as the proposed Lead Counsel for the Class. The members of Levi & Korsinsky have extensive experience in successfully prosecuting complex securities class actions such as this one, and are well-qualified to represent the Class. *See* McCall Decl. Ex. D (the firm resume of Levi & Korsinsky).

## IV.   CONCLUSION

For the foregoing reasons, Movant respectfully requests the Court grant his Motion and enter an order: (1) consolidating the actions; (2) appointing Movant as Lead Plaintiff for the Class in the Consolidated Action; and (3) approve Levi & Korsinsky as Lead Counsel for the Class.

Dated: May 6, 2019                              Respectfully submitted,

                                                **LEVI & KORSINSKY, LLP**

                                                 /s/ *Adam C. McCall*
                                                Adam C. McCall (SBN 302130)
                                                445 South Figueroa Street, 31st Floor
                                                Los Angeles, CA 90071
                                                Tel: (213) 985-7290
                                                Email: amccall@zlk.com

                                                *Attorneys for Movant Peter J. Enzinna*

# CERTIFICATE OF SERVICE

I, Adam C. McCall, hereby declare under penalty of perjury as follows:

I am an associate attorney at Levi & Korsinsky, LLP, with offices at 445 South Figueroa Street, 31st Floor, Los Angeles, CA 90071. I am over the age of eighteen.

On May 6, 2019, I electronically filed the following **MEMORDANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION OF PETER J. ENZINNA FOR  CONSOLIDATION OF THE ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on May 6, 2019.

 /s/Adam C. McCall
Adam C. McCall