ROBBINS GELLER RUDMAN
  & DOWD LLP
BRIAN O. O'MARA (229737)
DANIELLE S. MYERS (259916)
JUAN CARLOS SANCHEZ (301834)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
bomara@rgrdlaw.com
dmyers@rgrdlaw.com
jsanchez@rgrdlaw.com

[Proposed] Lead Counsel for [Proposed] Lead Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| WILLIAM FABBRI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>INOGEN, INC., et al.,<br><br>Defendants. | Case No. 2:19-cv-01643-FMO-AGR<br><br>CLASS ACTION<br><br>MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL<br><br>DATE:      June 6, 2019<br>TIME:      10:00 a.m.<br>CTRM:     6D<br>JUDGE:    Hon. Fernando M. Olguin |

1560408_1

## I.    INTRODUCTION

Two related securities class action lawsuits (the "Related Actions") are pending before this Court on behalf of purchasers of Inogen, Inc. ("Inogen" or the "Company") securities between November 8, 2017 and February 26, 2019 (the "Class Period") seeking to pursue remedies under the Securities Exchange Act of 1934 ("1934 Act") against the Company and two of its senior executive officers.[1]  In securities class actions, the Private Securities Litigation Reform Act of 1995 ("PSLRA") requires district courts to resolve consolidation before appointing a lead plaintiff.  *See* 15 U.S.C. §78u-4(a)(3)(B)(ii).  Here, the Related Actions should be consolidated because they involve identical legal and factual issues.  *See* Fed. R. Civ. P. 42(a).

As soon as practicable after its decision on consolidation, the Court "shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions." 15 U.S.C. §78u-4(a)(3)(B)(ii).  The lead plaintiff is the member "of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i).  Dr. John Vasil should be appointed lead plaintiff because he filed a timely motion, has the largest financial interest in the outcome of this litigation, and will typically and adequately represent the class's interests.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii).  In addition, Dr. Vasil's selection of Robbins Geller Rudman & Dowd LLP to serve as lead counsel should be approved because the Firm possesses extensive experience prosecuting securities class actions and will adequately represent the interests of all class members.

## II.    FACTUAL BACKGROUND

Inogen is a medical technology company that primarily develops, manufactures, and markets portable oxygen concentrators used to deliver supplemental long-term oxygen therapy to patients suffering from chronic respiratory conditions.

---

[1]    The Related Actions are: (1) *Fabbri v. Inogen, Inc.*, No. 2:19-cv-01643-FMO-AGR filed on March 6, 2019; and (2) *Friedland v. Inogen, Inc.*, No. 2:19-cv-02112-FMO-AGR filed on March 21, 2019.

- 1 -

1560408_1

As the complaints allege, by overstating the strength of Inogen's salesforce acumen and the size of the total addressable market ("TAM") for its portable oxygen concentrators throughout the Class Period, Inogen and its senior executives led the market to believe the Company's business metrics and financial prospects were much stronger than they really were, causing a sizable run-up in the price of Inogen common stock – which skyrocketed from its close of $101.65 per share on November 7, 2017 to reach a Class Period high of more than $282 per share by September 14, 2018. Unbeknownst to investors, Inogen was overstating the true size of the TAM for its portable oxygen concentrators, claiming it was upwards of 3 million people; misstating the basis for its calculation of the TAM; falsely attributing its sales growth to the strong sales acumen of its salesforce, when in reality it was due in large part to nefarious sales tactics designed to deceive its elderly customer base (including inducing them to purchase portable oxygen concentrators from Inogen at inflated prices by claiming that Medicare did not otherwise cover payment for such devices if obtained from other providers); that as such, the growth in Inogen's domestic business-to-business sales to home medical equipment ("HME") providers was inflated, unsustainable, and was eroding direct-to-consumer sales; that very little of Inogen's business was actually coming from the more stable Medicare market; and that as a result, defendants' Class Period statements about Inogen's business metrics and financial prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

Inogen released its third quarter 2018 financial results after the market closed on November 6, 2018. While the quarterly financial results appeared to be in line with expectations, defendants shocked the market by revealing that the growth in domestic business-to-business sales to HME providers had slowed precipitously to 32% from 56% in the second quarter of 2018. And Inogen also reduced its guidance for fiscal 2018 adjusted earnings before interest, taxes, depreciation, and amortization ("EBITDA") to $60-$62 million from $65-$69 million. As a result, the price of

- 2 -

1560408_1

Inogen common stock fell over 19%, or $37.44 per share, to close at $155.86 per share, on very heavy volume of 2.64 million shares traded, almost 5 times the average daily volume over the preceding 5 trading days.

Then, following the publication of detailed investigative reports by stock analysts on February 8, 2019 and February 12, 2019, which challenged, among other things, the size of Inogen's actual TAM, the basis for its prior TAM claims, and the nefarious source of its Class Period sales growth, the price of Inogen common stock further declined precipitously to close at $138.05 per share on February 12, 2019.

Finally, on February 26, 2019, after the close of trading, Inogen issued a press release announcing its fourth quarter and fiscal year 2018 ("4Q18") financial results for the period ended December 31, 2018, and conducted a conference call with investors and stock analysts to discuss its business metrics and financial prospects. During the conference call, defendant Scott Wilkinson, Inogen's President and Chief Executive Officer ("CEO"), backtracked on the Company's prior TAM estimate of 2.5 to 3 million patients, and blamed Inogen's poor "domestic business-to-business sales" on "order activity [that] slow[ed] from one national home care provider in the fourth quarter of 2018." ECF No. 1 at ¶10. Inogen also reported that its 4Q18 non-Generally Accepted Accounting Principles EBITDA was $10.5 million, 9.5% lower than fiscal 2017, and significantly reduced its previously provided fiscal 2019 net income guidance, blaming in large part the decline in its own stock price. On this news, the price of Inogen common stock fell an additional $33.77 per share, or more than 24%, from a close of $140.06 per share on February 26, 2019, to a close of $106.28 per share on February 27, 2019, on unusually high volume of more than 3.64 million shares traded, or more than 7 times the average daily trading volume over the preceding 5 trading days.

As a result of defendants' alleged wrongful acts and omissions and the decline in Inogen's stock value, class members have suffered significant losses and damages.

- 3 -

1560408_1

### III.   ARGUMENT

#### A.   The Related Actions Should Be Consolidated

The Court may consolidate actions if they "involve a common question of law or fact." Fed. R. Civ. P. 42(a). "'Courts have recognized that securities class actions are particularly suited to consolidation to help expedite pretrial proceedings, reduce case duplication, avoid the involvement of parties and witnesses in multiple proceedings, and minimize the expenditure of time and money.'" *Shreves v. Xunlei Ltd.*, 2015 WL 5446935, at \*2 (C.D. Cal. Sept. 15, 2015) (citation omitted).

The Related Actions present identical factual and legal issues, allege identical class periods, raise virtually identical claims, and name identical defendants. Because the Related Actions pending before this Court are based on the same facts and involve the same subject matter, the same discovery will be relevant to all lawsuits. Thus, consolidation is appropriate here.[2] *See id.* at \*2 ("Consolidation is appropriate when multiple cases 'allege the same misrepresentations and omissions by' defendants and have similar class definitions." (citation omitted)).

#### B.   Dr. Vasil Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the 1934 Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1). First, the pendency of the action must be publicized in a widely circulated national business-oriented publication or wire service not later than 20 days after filing of the first complaint. 15 U.S.C. §78u-4(a)(3)(A)(i). Next, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person that –

> (aa) has either filed the complaint or made a motion in response to a notice . . . ;

---

[2]   The *Fabbri* action seeks to represent investors who purchased Inogen common stock while the *Friedland* action seeks to represent investors who purchased Inogen securities. This difference will be resolved upon the filing of a consolidated complaint.

- 4 -

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii); *see also In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002); *Shreves*, 2015 WL 5446935, at *2. Dr. Vasil meets each of these requirements and should therefore be appointed Lead Plaintiff.

### 1.      This Motion Is Timely

On March 6, 2019, the statutory notice was published on *Business Wire* advising class members of the pendency of the action, the alleged claims, the class definition, and the option of moving the Court to be appointed as lead plaintiff by May 5, 2019. *See* Declaration of Danielle S. Myers in Support of Motion for Consolidation, Appointment as Lead Plaintiff, and Approval of Lead Plaintiff's Selection of Lead Counsel ("Myers Decl."), Ex. A. May 5th was a Sunday, thus, pursuant to Fed. R. Civ. P 6(a)(1)(C), the "next day that is not a Saturday, Sunday, or legal holiday," is May 6, 2019 and Dr. Vasil's motion is timely filed and he is eligible to be considered for appointment as lead plaintiff.

### 2.      Dr. Vasil Has the Largest Financial Interest in the Relief Sought by the Class

During the Class Period, Dr. Vasil purchased 26,150 shares of Inogen stock and suffered over $386,000 in losses as the market began to learn the truth about defendants' allegedly false misrepresentations and omissions and the price of Inogen stock declined. *See* Myers Decl., Exs. B, C. To the best of his counsel's knowledge, there are no other plaintiffs with a larger financial interest during this Class Period. Therefore, Dr. Vasil satisfies the PSLRA's prerequisite of having the largest financial interest.

- 5 -

1560408_1

### 3.   Dr. Vasil Is Typical and Adequate of the Purported Class

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc).  Rule 23 of the Federal Rules of Civil Procedure requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class; and [that] the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(3)-(4); *Cavanaugh*, 306 F.3d at 730 (focusing "in particular" on typicality and adequacy at the lead plaintiff stage).

"So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status . . . ."  *Cavanaugh*, 306 F.3d at 732.  "The movant with the largest financial interest only needs to make a prima facie showing that it satisfies Rule 23 to be the presumptive lead plaintiff." *Shreves*, 2015 WL 5446935, at *3 (citing *Cavanaugh*, 306 F.3d at 739).  "To make a prima facie showing of typicality, a moving plaintiff should establish that its claims are similar to all class members."  *Id*.  In determining whether the adequacy requirement is met, "[a] court should inquire about the movant's interests in the outcome of the case and their willingness to vigorously represent the class's claims to determine if is a preliminary showing of adequacy." *Id.* "Additionally, a court should ensure that the movant's interests do not conflict with those of the class and that the movant's counsel is capable and qualified."  Here, Dr. Vasil satisfies these requirements.

Indeed, Dr. Vasil's claims arise out of the same events and are based on the same legal theories as the claims of other class members.  In addition, Dr. Vasil's interests are clearly aligned with the members of the class and there is no antagonism between his interests and the class members' interests.  Dr. Vasil has amply demonstrated his adequacy by signing a sworn Certification and a Declaration

- 6 -

1560408_1

affirming his willingness to serve as, and to assume the responsibilities of, class representative.  *See* Myers Decl., Exs. B, D.  In addition, Dr. Vasil has selected counsel experienced in prosecuting securities class actions to represent him and the class.  *See infra* §III.C.

Because Dr. Vasil filed a timely motion, has the largest financial interest in the relief sought by the class, and is typical and adequate of the putative class, the Court should adopt the presumption that he is the presumptive lead plaintiff.

### C.    The Court Should Approve Dr. Vasil's Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval.  15 U.S.C. §78u-4(a)(3)(B)(v); *see also Cavanaugh*, 306 F.3d at 732-35.  Dr. Vasil has selected Robbins Geller to serve as lead counsel.

With more than 200 attorneys in offices nationwide, Robbins Geller possesses substantial experience litigating complex securities litigation like this case.  District courts throughout the nation have noted Robbins Geller's reputation for excellence, resulting in the appointment of Robbins Geller to lead roles in hundreds of complex securities class action cases.  *See, e.g.*, *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 797 (S.D. Tex. 2008) (commenting that the "experience, ability, and reputation of the attorneys of [Robbins Geller] is not disputed; it is one of the most successful law firms in securities class actions, if not the preeminent one, in the country"); *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 636 (C.D. Cal. 2009); (noting that it was "undisputable" that Robbins Geller lawyers have "extensive experience prosecuting suits of this nature"); *In re Hot Topic, Inc. Sec. Litig.*, 2014 WL 12462472, at *5 (C.D. Cal. Nov. 3, 2014) (finding that Robbins Geller was "qualified and competent" and noting that "[o]ther courts have stated that the firm . . . 'is comprised of probably the most prominent securities class action attorneys in the county'") (citation omitted); Myers Decl., Ex. E.

Robbins Geller's securities department includes numerous trial attorneys and many former federal and state prosecutors, and utilizes an extensive group of in-house

- 7 -

experts to aid in the prosecution of complex securities issues.  And, while trials in shareholder class actions are rare, Robbins Geller has tried nine cases to verdict, including a February 2019 trial in Los Angeles federal court in *HsingChing Hsu v. Puma Biotechnology, Inc.*, No. 8:15-cv-00865-AG-JCG (C.D. Cal.), where the jury returned a plaintiffs' verdict, finding that defendants Puma Biotechnology, Inc. and its CEO, Alan H. Auerbach, committed securities fraud and awarding shareholders up to $100 million in damages.

Thus, the Court can be assured that the class will receive the highest caliber of legal representation should it approve Dr. Vasil's selection of Robbins Geller as Lead Counsel for the putative class.

## IV. CONCLUSION

The Court should consolidate the Related Actions because they present identical factual and legal issues, raise virtually identical claims, and name identical defendants. In addition, Dr. Vasil has satisfied each of the PSLRA's requirements for appointment as lead plaintiff.  Accordingly, Dr. Vasil respectfully requests that the Court grant his motion for appointment as lead plaintiff and approve his selection of counsel.

DATED:  May 6, 2019

Respectfully submitted,

ROBBINS GELLER RUDMAN
 & DOWD LLP
BRIAN O. O'MARA
DANIELLE S. MYERS
JUAN CARLOS SANCHEZ

s/ Danielle S. Myers

DANIELLE S. MYERS

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone:  619/231-1058
619/231-7423 (fax)

[Proposed] Lead Counsel for [Proposed]
Lead Plaintiff

- 8 -

1560408_1

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on May 6, 2019, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Danielle S. Myers
DANIELLE S. MYERS

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  dmyers@rgrdlaw.com

1560408_1

# Mailing Information for a Case 2:19-cv-01643-FMO-AGR William Fabbri v. Inogen, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Mary K Blasy**
  mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Caz Hashemi**
  chashemi@wsgr.com

- **Frank J Johnson**
  frankj@johnsonfistel.com,michaelf@johnsonfistel.com,ceciliar@johnsonfistel.com,paralegal@johnsonfistel.com

- **Reed R Kathrein**
  reed@hbsslaw.com,danielles@hbsslaw.com,lisal@hbsslaw.com,sf_filings@hbsslaw.com

- **Adam C McCall**
  amccall@zlk.com

- **Catherine E Moreno**
  cmoreno@wsgr.com

- **Brian Oliver O'Mara**
  bomara@rgrdlaw.com,e_file_sd@rgrdlaw.com,kwoods@rgrdlaw.com

- **Laurence M Rosen**
  lrosen@rosenlegal.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)